UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY L. MORRIS,

    Plaintiff,

v.

IRON WORKERS' LOCAL NO. 25
PENSION FUND, PENSION PLAN
ADMINISTRATOR, BOARD OF
TRUSTEES,

    Defendants.
                                /

CASE NO. 2:09-CV-11007
JUDGE JULIAN ABELE COOK
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (docket #16)

I.    RECOMMENDATION: The Court should grant defendants' motion to dismiss plaintiff's complaint.

II.    REPORT:

A.    *Background*

Plaintiff Gary L. Morris, a state prisoner, commenced this action on March 18, 2009, by filing a *pro se* complaint pursuant to § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Defendants are the Iron Workers' Local No. 25 Pension Fund, as well as the plan administrator and board of trustees. For purposes of this motion to dismiss, the basic facts are not in dispute.

Plaintiff receives a monthly retirement pension benefit payment from the Fund. *See* Compl., ¶ 1. In July 1995, plaintiff began his incarceration under the custody of the Michigan Department

1

of Corrections following his state court conviction for criminal sexual conduct and the resulting imposition of a 20-40 year term of imprisonment. *See id.*, ¶ 2; MDOC Offender Tracking Information System website, available at <<www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=244534>>. On January 26, 2005, the Oakland County Circuit Court entered an order pursuant to the State Correctional Facility Reimbursement Act (SCFRA), MICH. COMP. LAWS §§ 800.401-.406, requiring plaintiff to change his address with defendants and direct that his future pension checks be deposited in plaintiff's prison account. *See* Compl., ¶ 3. In response, on February 8, 2005, plaintiff sent a letter to defendants directing them to *not* change his address without his consent. *See id.*, ¶ 4 & Ex. A. Because plaintiff did not change his address with defendants, on February 25, 2005, in accordance with the circuit court's order, the Michigan Attorney General sent notice to defendants of plaintiff's prison address. *See id.*, ¶ 5 & Ex. B. On April 22, 2005, the circuit court entered a corrected order. This order directed plaintiff to notify the Fund of his prison address and any future changes in his prison address, and to direct the payment of his pension benefits to his prison account. If he did not do so within one week of the order, the warden of the prison was directed to so notify defendants. The order also directed that 80% of any assets received from the Fund be deposited in the Michigan State Disbursement Unit for payment against unpaid child support obligations, and that 10% be paid to the State as reimbursement for the costs of his incarceration. *See id.*, ¶ 6 & Ex. C. Plaintiff sent another letter to defendants prohibiting any change in the disbursement of his pension benefits. *See id.*, ¶ 7 & Ex. D. Beginning June 1, 2005, defendants mailed plaintiff's pension checks to his prison account, from which the funds were distributed pursuant to the circuit court's order. *See id.*, ¶ 8 & Ex. E. Importantly, in July and September 2005, the prison made payments to the Oakland County Friend of Court to be applied to

plaintiff's outstanding child support obligations.

Meanwhile, in *DaimlerChyrsler Corp. v. Cox*, 447 F.3d 967 (6th Cir. 2006), the Sixth Circuit held that the SCFRA, as applied to direct pension benefit payments to prison accounts to be used to pay for the costs of incarceration, violates ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). In response to this decision, defendants ceased mailing plaintiff's pension check to the prison, and ultimately reimbursed him for all the amounts that had been improperly sent to the prison. *See* Compl., ¶¶ 10-12 & Exs. G-I.

During this time, plaintiff also sought to obtain relief from his past child support obligations. Pursuant to a Qualified Domestic Relations Order (QDRO), defendants now send $152.25 from each pension check to the Oakland County Friend of Court. Payments made by a pension fund pursuant to a QDRO are excepted from the ERISA anti-alienation provision, *see* 29 U.S.C. § 1056(d)(3). Plaintiff does not assert that these payments, in themselves, violate ERISA. Plaintiff ultimately sought to negate his child support obligations, arguing that the 10-year limitations period had expired. The circuit court ultimately rejected this argument, concluding that the payments made to the Friend of the Court in July and September 2005 served to waive the statute of limitations defense, notwithstanding that the payments were not voluntarily made. *See* Compl., ¶¶ 9, 13 & Ex. F. Plaintiff, contending that but for defendants' erroneous mailing of his checks to the prison account the statute of limitations would have lapsed on his child support obligations, sought to have defendants reimburse him for the $7,929.54 ordered to be paid by the Oakland County Circuit Court. Defendants declined to assume this obligation and reimburse plaintiff. *See* Compl., ¶¶ 14-21 & Exs. K-R.

Plaintiff commenced this action on March 18, 2009, pursuant to § 502(a)(1)(B) and (3)(B)

3

of ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(3). He does not seek damages for defendants' initial payment to his prison account, which has been fully reimbursed. Nor does he appear to challenge the withholding of his pension benefits pursuant to the QDRO. Rather, as noted above, he contends that the initial mailing of his pension benefits to the prison account constituted a breach of fiduciary duty, and that because of this breach he has been subjected to child support obligations that otherwise would have lapsed under the statute of limitations. That is, plaintiff alleges, but for the breach of fiduciary duty in directing payments to his prison account, no payments would have been made from his prison account to the Oakland County Friend of Court, and his duty to pay his past child support would have lapsed by the passage of the statute of limitations.

On April 7, 2010, defendants filed this motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). Defendants argue that plaintiff's complaint fails to state a claim for relief for three reasons. First, defendants argue, plaintiff's recovery is barred by his own unclean hands in attempting to avoid his child support obligations. Second, because they acted pursuant to a court order and the then-governing law, they did not breach any duty owed to plaintiff. Third, defendants argue, plaintiff's claim is barred by the statute of limitations. Plaintiff filed a response to the motion on April 30, 2010, and defendants filed a reply on September 27, 2010.[1] For the reasons that follow, the Court should grant defendant's motion.

B. *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided

---

[1] After conditionally granting plaintiff's request for counsel, on April 20, 2010, I entered an Order appointing William A. Godfrey as counsel for plaintiff. On May 26, 2010, I conducted a telephonic status conference with counsel for plaintiff and defendants. As a result of that conference, I entered an Order on May 26, 2010, granting plaintiff until June 15, 2010, to file an additional response to defendant's motion beyond the *pro se* response plaintiff had already filed. As of the date of this Report, no additional response has been filed.

4

for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id.* at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.
> 
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557 (brackets omitted).
> 
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule

5

> 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

Ordinarily, a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, Rule 10 provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED. R. CIV. P. 10(c). Thus, the Court may consider the exhibits attached to plaintiff's complaint in deciding whether the complaint states a claim upon which relief may be granted. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (in deciding a motion to dismiss, the court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *Realtek Indus., Inc. v. Nomura Secs.*, 939 F. Supp. 572, 575 n.1 (N.D. Ohio 1996).

C. *Analysis*

    1. *The Nature of Plaintiff's Claim*

Because it affects the analysis of both the limitations and substantive issues, it is important at the outset to clarify the nature, and statutory basis, of plaintiff's claim. Plaintiff purports to bring his claim under both § 1132(a)(1)(B) and § 1132(a)(3). However, § 1132(a)(1)(B) is inapplicable here. That portion of the statute provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, plaintiff does not seek to "recover benefits due to him under the terms of the plan." As plaintiff concedes, the amounts withheld by defendants pursuant to the SCFRA order has been paid back to plaintiff. Nor does he seek to enforce any rights under the plan's terms, or to clarify his rights under the plan's terms. Rather, he seeks damages unrelated to the plan itself or his benefits under the plan, which he contends were caused by the defendants' initial breach of their fiduciary duties. Thus, § 1132(a)(1)(B) is inapplicable, and plaintiff's right to recover, if it all, is governed by § 1132(a)(3). *See Allinder v. Inter-City Products Corp. (USA)*, 152 F.3d 544, 550-51 (6th Cir. 1998) ("Section 1132(a)(1)(B)'s provisions concerning the recovery of benefits wrongfully denied are not applicable in this case because Allinder eventually did receive the benefits she was entitled to under ICP's policy."); *Klein v. Empire Blue Cross and Blue Shield*, 93-CV-5187, 1998 WL 336633, *3 (S.D.N.Y. June 23, 1998) (noting that "the cases make clear that when the benefits have been fully provided, the plaintiff cannot recover compensation [under section 1132(a)(1)(B) ] for any injury caused by a delay in those payments."). In short, plaintiff "is seeking neither benefits due pursuant to the Plan nor enforcement of a provision of the Plan, but extra-contractual damages based on an alleged breach of duty by the Plan. Therefore, section 1132(a)(1)(B), which allows a right of action to recover benefits or to enforce rights under the plan,

7

is inapplicable." *Frank v. Civil Service Employee Ass'n, Inc.*, No. 91-CV-763, 1992 WL 73191, at *1 (W.D.N.Y. Mar. 20, 1992). *See generally*, *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) (ERISA provides no right of action to recover extra-contractual compensatory damages).

Thus, plaintiff's right to recover must be analyzed under § 1132(a)(3). That section of the statute provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." A plan fiduciary's duties under ERISA are set forth in 29 U.S.C. § 1104. Section 1109, in turn, establishes a fiduciary's personal liability to the *plan*, as opposed to individual beneficiaries, for losses caused to the plan by the fiduciary's breach of duty. *See* 29 U.S.C. § 1109; *Kessen v. Plumbers' Pension Fund, Local 130*, 877 F. Supp. 1198, 1205 (N.D. Ill. 1995) ("Under Section 1109, liability for a breach of fiduciary duty runs only to the plan and not to individual participants or beneficiaries."). However, in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the Supreme Court held that a plan beneficiary may bring a breach of fiduciary duty claim under § 1132(a)(3). *See Varity Corp.*, 516 U.S. at 509-15. For the reasons explained below, however, plaintiff does not have a valid claim under § 1132(a)(3) as a matter of law.

2. *Statute of Limitations*

First, plaintiff's claim is barred by the statute of limitations. Although ERISA does not contain a general statute of limitations for all claims brought pursuant to the statute, thus requiring borrowing of analogous state limitation periods, ERISA does contain a statute of limitations governing breach of fiduciary claims. That statute provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with

> respect to a violation of this part, after the earlier of–
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Because a fiduciary duty claim brought by a plan beneficiary under § 1132(a)(3) is a claim "with respect to a fiduciary's breach of any responsibility, duty or obligation under this part,"–that is, such a claim is based on a violation of the fiduciary duties set forth in § 1104–such a § 1132(a)(3) claim is governed by the statute of limitations set forth in § 1113. *See Radford v. General Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998); *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 297 (S.D.N.Y. 1998); *Cramer v. Hartford Hosp.*, No. 3:96CV217, 1996 WL 732552, at *4 (D. Conn. Dec. 6, 1996) (citing *Rush v. Martin Peterson Co.*, 83 F.3d 894 (7th Cir. 1996); *Adamson v. Armco, Inc.*, 44 F.3d 650 (8th Cir. 1995)).

Here, plaintiff does not allege any fraud or concealment of the alleged breach of fiduciary duty, rendering inapplicable the exception set forth in § 1113. Thus, plaintiff's action is untimely if it was not filed within the *earlier* of six years after the breach of duty or three years of the date that plaintiff had knowledge of the breach. In this case, the breach of which plaintiff complains occurred in June through September 2005, when defendants mailed his pension checks to the prison account. It was from these deposits that the prison forwarded the July and September 2005 child support payments to the Oakland County Friend of Court. And there is no dispute that plaintiff had "actual knowledge of the breach or violation" at that time. Plaintiff alleges as much, noting that he vigorously contested the SCFRA assignment even prior to the time it was made. "[T]he relevant

knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003). Here, plaintiff's complaint establishes that he had actual knowledge of the facts constituting the alleged violation–*i.e.*, defendants' mailing of the checks to the prison account–at the time the checks were mailed. Thus, his claim accrued at the latest in September 2005, and the three year limitations period expired in September 2008. Because plaintiff did not file his complaint until March 2009, the claim is barred by § 1113.[2]

---

[2]To be sure, plaintiff alleges that defendants continued to breach their fiduciary duties by mailing his pension checks to the prison account through June 2006. However, defendant does not allege any damages resulting from these breaches. As noted above, defendants fully repaid the amounts that had wrongfully been sent to the prison account. Plaintiff's only damages claims relates to the funds that were forwarded to the Oakland County Friend of Court, which must have resulted from the alleged breaches predating the July and September 2005 payments by the prison to the Friend of Court. Plaintiff has cited, and I have found, no cases which would allow him to bootstrap his untimely claims for which he seeks damages to timely allegations of breaches of fiduciary duties by which he has not been damaged in any way. On the contrary, the courts have found that such a "continuing violation" theory is not available under § 1113. As the Ninth Circuit has explained:

> This application of the continuing violation theory founders on the plain language of § 1113(a)(2). This section requires the plaintiff's knowledge to be measured from the "earliest date" on which he or she knew of the breach. While the trustees' conduct may be viewed as a series of breaches, all were of the same character . . . . Once a plaintiff knew of one breach, an awareness of later breaches would impart nothing materially new. The earliest date on which a plaintiff became aware of any breach would thus start the limitation period of § 1113(a)(2) running. The district court's application of the continuing violation theory essentially reads the "actual knowledge" standard out of the statute.

*Phillips v. Alaska Hotel & Restaurant Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991) (citation omitted); *see also, Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007); *Edwards v. United States Dep't of Energy*, 371 F. Supp. 2d 859, 869 (W.D. Ky. 2005), *aff'd*, 200 Fed. Appx. 386 (6th Cir. 2006); *Edes v. Verizon Communications, Inc.*, 288 F. Supp. 2d 55, 61-62 (D. Mass. 2003); *Larson v. University Women's Health Pension Plan*, 971 F. Supp. 398, 400 (D. Minn. 1997).

Attempting to avoid this conclusion, plaintiff argues that the payments made by defendants to the Oakland County Friend of Court from November 29, 2007, through the present, constitute separate breaches rendering his claims timely. Even if these claims were properly presented and meritorious (issues discussed below), they would not render timely plaintiff's breach of fiduciary duty claims premised on the mailing of his pension checks pursuant to the SCFRA orders. These payments are wholly separate from the SCFRA payments, being made pursuant to a subsequently entered QDRO. They are different in kind from the fiduciary duty claims raised in the complaint, and thus do not serve to render those claims timely. Accordingly, the Court should conclude that plaintiff's breach of fiduciary duty claims are barred by § 1113 as a matter of law.

3. *Merits*

Further, even if the claims were timely, plaintiff is not entitled to relief on the merits. Turning first to the claims raised in the complaint, even if the defendants' conduct in sending the pension checks to plaintiff's prison account, in compliance with state court orders valid on their face, plaintiff is not entitled to any relief under § 1132(a)(3). By its terms, § 1132(a)(3) allows a suit only to either (a) "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or (b) "obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Thus, by its terms § 1132(a)(3) provides for only equitable relief, that is, "'those categories of relief that were *typically* available in equity.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Plaintiff's complaint does not seek any form of equitable relief, such as an injunction or the like. Rather, he seeks compensatory, monetary damages. His complaint is titled a "Claim for Lost Benefits and

Damages," he sets forth his damages as the $7,929.54 he was found owing by the Oakland County Circuit Court, his liability for which would have lapsed pursuant to the statute of limitations but for defendants' alleged breach, *see* Compl., at 5-6, and plaintiff's prayer for relief asks for nothing other than an award of damages in the amount of $7,929.54, *see id*. at 7-8.

"[W]hat [plaintiff] in fact seek[s] is nothing other than compensatory *damages*–monetary relief for all losses [he] sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of *legal* relief." *Mertens*, 508 U.S. at 255. Section 1132(a)(3) "does not provide a cause of action for legal actions for monetary damages disguised as suits in equity." *Ramsey v. Formica Corp.*, 398 F.3d 421, 425 (6th Cir. 2005) (citing *Great-West Life*, 534 U.S. at 215-16); *see also*, *Mertens*, 508 U.S. at 255-56. Because plaintiff seeks only monetary damages resulting from defendants' alleged breach of their fiduciary duties, his claim is not cognizable under § 1132(a)(3).

In his response to defendants' motion, plaintiff also asserts that the payments made beginning in November 2007 pursuant to the QDRO violate ERISA. This claim fails, for two reasons. First, it is not a claim raised in the complaint. Although the complaint notes that the $7,929.54 child support obligation is being satisfied by the payment of $152.25 per month from his pension benefit, nowhere in the complaint does plaintiff allege that this payment violates ERISA. Rather, he contends in the complaint only that defendants are liable for the $7,929.54 in back child support because, but for their alleged breaches in directing prior checks to his prison account, he would not be obligated to pay this amount at all. "It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time." *Boyer v. Board of County Comm'rs of Johnson County*, 922 F. Supp. 476, 480 (D. Kan. 1996); *see also*, *Tucker v. Union of*

12

*Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) ("A nonmoving party may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.").

Further, even if this claim were properly before the Court, it fails as a matter of law. Pursuant to 29 U.S.C. § 1056(d)(3), the anti-alienation provision does not apply to an assignment of benefits made pursuant to a QDRO. The following facts are undisputed. On November 29, 2007, the Oakland County Friend of Court entered an "Order to Withhold Income for Child Support, directing the Fund to withhold $155.75 per month from plaintiff's pension benefits. *See* Pl.'s Resp., Ex. X. Counsel for the Fund sent a letter to the Friend of Court advising that it could not withhold funds pursuant to the order because it was not in the proper form to qualify as a QDRO. Instead, counsel advised the fund to segregate the funds until a QDRO was entered. *See id.*, Ex. Y. On March 14, 2008, the Oakland County Circuit Court entered a "Qualified Domestic Relations Order" containing all the information required by § 1056(d)(3). *Compare id.*, Ex. Z, *with* 29 U.S.C. § 1056(d)(3)(B)-(D). This QDRO is valid on its face, and "ERISA does not require, or even permit, a pension fund to look beneath the surface of the order. Compliance is obligatory." *Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998); *see also*, *Matassarin v. Lynch*, 174 F.3d 549, 568 (5th Cir. 1999). Nor did defendants breach any duties by informing the Friend of Court that the initial order to withhold was not a valid QDRO and by segregating the relevant funds while a QDRO was obtained. "Once the pension plan is on notice that a domestic relations order has issued that *may* be a QDRO, the plan may take reasonable steps to determine whether the order is a QDRO and therefore creates obligations for the pension plan." *Trustees of the Directors Guild of Am.-Producers Pension Benefit Plan v. Tise*, 234 F.3d 415, 421-22 (9th Cir. 2000). And the actions

taken by defendants here are expressly authorized by ERISA. *See* 29 U.S.C. § 1056(d)(3)(G)(ii), (H)(I). Indeed, § 1056(d)(3)(H)(I) "require[s] that the plan take steps to ensure the preservation of benefits that are otherwise payable while the determination of QDRO status is undertaken." *Files v. ExxonMobil Pension Plan*, 428 F.3d 478, 489 (3d Cir. 2005). Thus, any claim based on defendants' segregation of funds and payment pursuant to the QDRO fails as a matter of law.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff's complaint fails to state a claim upon which relief may be granted because (a) the claims are barred by the statute of limitations, and (b) the claims fail on the merits as a matter of law. Accordingly, the Court should grant defendants' motion to dismiss.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                s/Paul J. Komives  
                                                PAUL J. KOMIVES  
                                                UNITED STATES MAGISTRATE JUDGE

Dated: December 7, 2010

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record herein by electronic means or U.S. Mail on December 7, 2010.

                    s/Kim Grimes  
                    Case Manager Supervisor  
                    Acting in the Absence of Eddrey Butts,  
                    Case Manager